Scofield, J.,
delivered the opinion of the court :
July 1, 1873, the Board of Public Works for.the District of Columbia issued “ certificates of indebtedness,” commonly called sewer certificates, to the amount of about $2,000,000. They were issued in sums of $50 and multiples thereof, and made payable to bearer. They became due at different dates, beginning with July 1,1874, and ending July 1,1878. Coupons for the semi-annual interest, at the rate of 8 per cent., were attached.
The certificates were paid out to contractors, laborers, and others, and were bought and sold by brokers and speculators at depreciated prices.
By act of Congress approved June 20,1874, the Board of Public Works was abolished, and a Board of Audit, consisting of the First and Second Comptrollers of the United States, created, authorized to audit the floating indebtedness of the District, including the sewer certificates, and to issue therefor Auditor’s certificates, convertible into a new District bond, bearing interest at the rate of 3.65 per cent.
Under the operation of this act all the sewer certificates, except about $65,000, were redeemed prior to February, 1876, and canceled by stamping in ink across the face the words “ Canceled by the Board of Audit.” When so stamped they were tied up in bundles and placed on a shelf under a counter in the room where the work had been done. In February or March, 1876, a package of the certificates thus canceled, amounting to $11,850, was stolen by George H. Farnhara, a clerk in the employ of the Board of Audit, with a desk in this room, but who had no connection with the redemption, cancellation, or care of the certificates. From a large portion of the certificates Farnham easily and entirely removed the marks of cancellation by the use of detersive soap. Upon some of them ink-marks were still visible. From these he cut off the coupons and pasted them over the partially effaced cancellation.
In this condition he sold the certificates to brokers in Wash *235 ington, who sold them to S. S. Ritchie, from whom the claimant purchased.
All these several parties purchased the certificates for a valuable consideration, in good faith, without knowledge or suspicion that they had been redeemed or canceled.
A portion of the certificates thus purchased, amounting to $2,500, became due July 1,1874 and 1875, and were therefore overdue when stolen.
Another portion, amounting to $7,750, were purchased by Ritchie and transferred to the claimant before due.
The remainder, amounting to $1,600, were not purchased by Ritchie until after due. Whether they were purchased from Farnham by Ritchie’s assignors before or after due does not appear.
Ritchie forwarded and sold to the claimant, who resided at Akron, Ohio, the certificates as fast as purchased.
That the claimant is not entitled to recover upon the certificates which became due in 1874 and 1875, amounting to $2,500, there can be no doubt. They were due before they were stolen, and the purchaser took them subject to all legal defenses.
Another portion of the certificates, amounting to $1,600, cannot be considered as standing in any better position. It having been shown that they were acquired by the claimant and his immediate assignor, Mr. Ritchie, after due, it became part of his case, in order to avail himself of the rights to prior holders, to show that they purchased the certificates before they were due. The claimant has not proved that fact, and the law will not presume it.
To the remaining $7,750 several defenses are set up.
It is said the certificates were not negotiable, because they contained the following recitation: “ That for work done under direction of the Board of Public Works, and chargeable to private property adjoining and benefited thereby, * * * secured by pledge to the commissioners of the sinking fund, of assessments made in accordance with the act approved June 26,1874, against private property benefited by improvements and receivable in payment of such assessments.”
The first clause only recited the consideration, and is equivalent to saying “ for value received.” The-statement that value was received in a particular way does not affect the negotiability of the paper. The second clause recites the manner in *236 which the District expected to reimburse itself for the payment of the certificates, but does not limit the liability of the District to this one source of revenue. It was apparently inserted to give the certificates greater credit by announcing- that the District had this means of payment in addition to ordinary taxation. The general liability of the District and the negotiability of the certificates are declared in these words: “This certifies that * * * there is due to the bearer,” &c.
The defendant further contends that under the operation of the Act June 20, 1874 (18 Stat. L., 119,120), all the certificates became due August 1,1874, and were thus overdue and subject to any defense-existing at the time of claimant’s imrehase. We do not concur in this position. By this act a new bond, running from August 1, 1874, was created, into which the creditors of the District were permitted, at their option, within a limited time, to fund their claims. In this way most of the securities were funded within the prescribed time.
By the Act June 16,1880 (21 Stat. L., 284), the holders of certificates not thus funded were allowed to establish their claims in this court. By sections o aud 6 of that act the judgments rendered by the court against the District are tobe paid in the manner provided in the act of June 20, 1874. • The District could not be called upon to pay the certificates before they become due by their own terms in any other way than the one prescribed bj- this act.
The defendant further contends that the appearance of the certificates was such that the claimant was bound, at his peril, to make inquiry at the office of redemption. The rule applicable to the case is stated by the Supreme Court in Cromwell v. The County of Sac (96 U. S. R., 57, 58), as follows:
“Obligations of municipalities in the form of those in suit here are placed by numerous decisions of this court on the footing of negotiable paper. They are transferable by delivery, and, when issued by competent authority, pass into the hands of bona fide purchasers for value before maturity, freed from any infirmity in their origin. Whatever fraud the officers authorized to issue them may have committed in disposing- of them, or however entire may have been the failure of consideration promised by parties receiving them, these circumstances will not affect the title of subsequent bona fide purchasers for value before maturity, or the liability of the municipalities. As with other negotiable paper, mere suspicion that there may be a defeat of title in its holder, or knowledge of circumstances *237 which would excite suspicion as to his title in the mind of a prudent man, is not sufficient to impair the title of the purchaser ; that- result will only follow where there has been bad faith on his part. Such is the decision of this court, and substantially its language, in the case of Murray v. Lardner, reported in 2 Wall., where the leading authorities on the subject are considered.”
The court has been unable to find in the appearance and condition of the certificates the facts which, according to the requirements of this rule, should defeat a recovery.
The only suspicious facts about the certificates were overdue coupons attached to them, coupons not due cut off and pasted on the face of some of them, añd the soiled or stained appearance of others. All these appearances might escape the attention of a cautious man ; but if they did not, explanations satisfactory even to suspicious persons would naturally occur. It was well known that after the act of June 20, 1874, the coupons had not been paid, and the absence of overdue coupons would have been more suspicious than their presence. It was also well known that the certificates, having been issued in small sums, were paid out to contractors, jobbers, and laborers, and passed from hand to hand. In this way both the soiled condition and the unusual way of attaching severed coupons might readily be accounted for.
The Board of Audit, which for the purpose of redeeming and caring for the certificates was the defendant’s agent, are not free from blame. Considering that they were redeemed long before they were due, the cancellation was entirely insufficient to protect the public against imposition. They should have been punched or otherwise mutilated, or burned, as required by section 10 of the Act Mareh'5,-l§15 (18 Stat. L., 505), or at least deposited in a safe or vault. Instead of that they were stamped with ordinary ink, easily washed off, and left in a room exposed to the view of all persons visiting it, in a way to lead weak or dishonest persons into temptation.
Considering this fact in connection with the rules of law and the facts before referred to, the court arrives at the conclusion that the claimant is entitled to recover for the amount of certificates purchased before due, to wit, $7,750. This does not enable him to recover for the coupons attached but long overdue at the time of purchase.
Judgment will be entered for $7,750, due and payable as of January 1, 1876.